# IN THE COURT OF APPEALS OF IOWA

No. 23-1608
Filed November 21, 2023

**IN THE INTEREST OF I.C.,**
**Minor Child,**

**L.B., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Brandy R. Lundy of Lundy Law, PLC, Fort Dodge, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Buller, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**CARR, Senior Judge.**

A mother appeals the termination of her parental rights. Termination of the mother's parental rights is in the child's best interests, none of the exceptions to termination should be applied, and it would be contrary to the child's best interests to give the mother an extension of time. We affirm the termination of the mother's parental rights.

## I.     Background Facts & Proceedings

L.B. is the mother and S.C. is the father of I.C., born in 2017.[1] There have been concerns about the mother's substance abuse, mental-health needs, and low intellectual functioning. In 2022, the Iowa Department of Health and Human Services (HHS) received a report that the mother was permitting a homeless man, A.M., to stay in her apartment and watch the child while she was at work. There was also a report that A.M. inappropriately touched the child. The mother did not believe the child's statements and continued in a romantic relationship with A.M.

The child was removed from the mother's care in September and placed with family friends. The child was adjudicated to be in need of assistance (CINA) under Iowa Code section 232.2(6)(3)(b) (2022). A parenting evaluation "strongly recommended that [the mother] have someone to reside with her to assist her if [the child] is to return to her home" based on her mental-health problems and intellectual disability.

The mother began participation in recommended Dialectical Behavioral Therapy (DBT) and she participated in this every two weeks. The therapist

---

[1] The father was in prison throughout the juvenile court proceedings. He has not appealed the termination of his parental rights.

determined the mother should have normal therapy as the therapist did not think the mother could "handle" DBT therapy. It was also recommended that she participate in group alcohol counseling. She attended this counseling for a period of time but then quit. After a few months, the mother re-engaged with group alcohol counseling.

The mother was in a relationship with A.S., who was using methamphetamine and marijuana. He pled guilty to a charge of possession of methamphetamine, second offense, and was placed on probation. He told social workers that he smoked marijuana every day. The mother and A.S. had a contentious relationship. The mother and A.S. lived in an apartment with A.S.'s mother.

On August 23, 2023, the State filed a petition to terminate the parents' rights. At the hearing, A.S. became upset and left the courtroom during the testimony of the family's HHS social worker. The mother testified she was in the process of obtaining independent housing. She asked for an extension of time for the child to be returned to her care.

The juvenile court entered an order on September 20 terminating the mother's rights under section 232.116(1)(f) (2023). The court found termination was in the child's best interests, noting, "The mother still suffers from poor mental health and is mentally unable to care for the child. [The mother] is no closer to reunification today than when [the child] was removed 12 months ago." The court declined to apply any of the exceptions to termination found in section 232.116(3). The court also denied the mother's request for a six-month extension of time. The court stated, "The unfortunate fact of the matter is that the mother is not mentally

and intellectually capable of raising I.C. on her own and will not be able to do so in six months under even the most optimistic of scenarios." The mother appeals the termination of her parental rights.

## II.    Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). The State must prove its allegations for termination by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we consider whether there is a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* But in instances where the parent does not raise a claim relating to any of the three steps, we do not address them and instead limit our review to the specific claims presented.[2] *See id.* at 40 (recognizing we do not consider a step the parent does not challenge).

---

[2] The mother does not challenge the sufficiency of the evidence to support the statutory ground for termination of parental rights in this case, so we do not address that issue.

### III.    Best Interests

The mother claims termination of her parental rights is not in the child's best interests. She asserts that she and the child enjoy their time together during supervised visits.

In considering the best interests of a child, we give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional needs of the child under section 232.116(2)." *Id.* at 41. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.*

At the termination hearing the mother testified she did not believe A.M. inappropriately touched the child because it never happened while she was present, although she admitted she sometimes left the child alone with A.M. She stated that even though A.M. allegedly touched the child, she still chose to be in a relationship with him. Her relationship with A.M. ended only when he became involved with someone else and she became involved with A.S. As noted, A.S. has problems with substance abuse. The mother continues to associate with inappropriate paramours and places her relationship with them over the well-being of the child.

Furthermore, the mother is unable to effectively care for the child due to her mental-health problems and low intellectual functioning. The parenting evaluation found the mother was unable to care for the child on her own. We determine that termination of the mother's parental rights is in the child's best interests.

**IV.     Exceptions**

The mother asserts that the juvenile court should have applied an exception to termination.  She states that termination of her parental rights would be detrimental to the child due to the closeness of the parent-child relationship.  *See* Iowa Code § 232.116(3)(c).

The exceptions to termination found "in section 232.116(3) are permissive, not mandatory."  *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021) (citation omitted).  "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the child[ ]."  *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).  "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3) . . . ."  *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).  The child's best interests remain our first consideration.  *Id.* at 475.

The juvenile court found:

> The Court finds that there is no clear and convincing evidence that termination would be detrimental to the child due to the closeness of the parent-child relationship. . . .  It is true that [the child] is bonded with his mother, but any sadness the child may experience in the short-term will be far outweighed by the benefits to him in the long-term.

We agree with the court's assessment.  The mother has not met her burden to show termination of her parental rights would be detrimental to the child.  *See* Iowa Code § 232.116(3)(c).

### V.     Extension of Time

The mother contends the juvenile court should have granted her an extension of time. She testified that she was working on obtaining housing. The mother planned to move into her own apartment, where she stated the child could be placed in her care.

A six-month extension of time may be granted under sections 232.104(2)(b) and 232.117(5) if parental rights are not terminated following a termination hearing. *In re D.P.*, No. 21-0884, 2021 WL 3891722, at *2 (Iowa Ct. App. Sept. 1, 2021). An extension of time may be granted if the court "determin[es] that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (quoting Iowa Code § 232.104(2)(b)). "The judge considering [the extension] should however constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *Id.* (citation omitted).

On this issue, the juvenile court stated:

> The mother's main argument in favor of six additional months is that she will soon be eligible for a housing voucher, which will allow her to get a place of her own to bring [the child] back to. While that would be a commendable accomplishment, the lack of suitable housing is not the Court's main concern. Even if [the mother] got the best apartment ever, [the child] could not be safely returned to the mother there. The unfortunate fact of the matter is that the mother is not mentally and intellectually capable of raising [the child] on her own and will not be able to do so in six months under even the most optimistic of scenarios. [The mother] is to be applauded for all the hard work she has put in, but those efforts have not put her in a place where she can safely and effectively raise I[the child] on her own. [The mother's] mental health is still too fragile and she has identified no one who could be healthy and positive supports for her. Her current drug-using boyfriend is not appropriate.

Unfortunately, the Court has no confidence that the mother's prognosis will be better in six months' time. [The mother] has had a year to work towards reunification, but she is no closer to that goal than she was 12 months ago.

We conclude a six-month extension of time is not appropriate. The evidence does not show the child could be returned to the mother's care within six months. At the termination hearing, the mother showed she would still be unable to protect the child.

We affirm the decision of the juvenile court.

**AFFIRMED.**